HENRY BAKER v. THE STATE.

No. 4061. Decided May 17, 1916.

1.—Murder—Continuance — Incompetent Witness — Practice in District Court—Pardon—Judgment.

Where, upon trial of murder, the State in its contest upon the application for a continuance, showed that one of the absent witnesses was incompetent to testify because he had been convicted of felony in the District Court in which defendant was being tried, there was no necessity of introducing a certified copy of the judgment and sentence, as the trial district judge takes judicial notice of all judgments and decrees entered in his court and no proof of this oral or otherwise was required, and the incompetency of said witness continued until a copy of his pardon was produced. Following Cooper v. State, 7 Texas Crim. App., 194. Davidson, Judge, dissenting.

**2.—Same—Continuance—Other Witnesses.**

Where one of the alleged absent witnesses would have testified, according to defendant's application, to the same facts which could have been shown by other witnesses in attendance who were not used as witnesses, there was no error in overruling the application for a continuance.

**3.—Same—Evidence—Res Gestae—Dying Declarations.**

Upon trial of murder, there was no error in permitting witnesses to testify to the declarations made by deceased a few minutes after he was stabbed, and coming from the scene of the difficulty, to the effect that defendant had stabbed him and that he was going to fall, etc., and that he then fell and died; this testimony was admissible both as res gestae and dying declarations.

**4.—Same—Evidence—Conduct of Witnesses—Bystander.**

Where the wife of the deceased and daughter of defendant was a most material witness and had testified for the defense that the deceased had made an attack with a gun upon her brother; that she picked up a shot-gun and made defendant 'lay his gun down and then called in her father and another party to prevent deceased from shooting her brother; that deceased then grabbed a gun and declared he would kill them all and that in the scuffle over the gun with the deceased, the defendant had struck deceased; that she had placed the gun under the bed immediately after her father had stabbed deceased, the State contending that deceased had used no gun, there was no error in cross-examination of this witness to show that she placed a placard on the door stating that the business was closed for the day; it being thus disclosed that she was not a mere bystander but a participant in the entire difficulty, etc. Davidson, Judge, dissenting.

**5.—Same—Declarations by Defendant—Evidence—Exculpatory Statements. —Contradicting Witness.**

Where, upon trial of murder, defendant had testified to a most vigorous case of self-defense and the defense of others, there was no error in permitting the State to show defendant's statement made a few minutes after the difficulty, that he made no claim of self-defense, but denied having had any trouble with the deceased, and which was wholly exculpatory and made when defendant was not under arrest and was a part of the res gestae. Following Whorton v. State, 152 S. W. Rep., 1082, and other cases.

**6.—Same—Conduct of Witness—Credibility of Witness.**

Where, upon trial of murder, the evidence disclosed that the wife of the deceased who gave material evidence for the defense and who was not a mere bystander, but a participant in the entire difficulty, there was no error in admitting testimony to prove the fact that she did not go to the body of the deceased until late that night, and that she had declared immediately after the killing that the same was uncalled for; all of this affected her credibility. Davidson, Judge, dissenting.

**7.—Same—Defendant as a Witness.**

Where defendant testified in his own behalf, it was permissible to show that he had within less than seven years prior to his trial been indicted for a felony; the court also permitting him to testify that he was acquitted of the charge.

**8.—Same—Charge of Court—Requested Charges.**

Where, upon trial of murder, the whole case proceeded on the theory that the place where deceased was killed was also defendant's home, there was no reversible error in the court's failure to submit a requested charge that the defendant had a right to go to that place, as this was not an issue in the case; nor was it error to refuse special charges which were covered by the main charge.

**9.—Same—Sufficiency of the Evidence.**

Where, upon appeal from a conviction of murder, the evidence was sufficient, although mainly circumstantial, to sustain the conviction under a proper charge of the court, there was no reversible error. Davidson, Judge, dissenting.

**10.—Same—Bystander—Motion for Rehearing—Conduct of Witness.**

Where appellant, in his motion for rehearing, contended that the wife of the deceased who gave material testimony for the defense was but a mere bystander and that her acts and conduct were not admissible in evidence, but the record disclosed that the contrary was true and that she was not a mere chance looker, but a participant in the entire difficulty, her acts and conduct immediately after the difficulty were admissible in evidence. Following Smith v. State, 48 Texas Crim. Rep., 233, and other cases. Davidson, Judge, dissenting.

**11.—Same—Evidence—Credibility of Witness.**

Where appellant contended that the fact the wife of the deceased did not go to his bedside was inadmissible and could be explained by considering the testimony as to the abuse of her by the deceased, yet it affecting her credibility, it was, nevertheless, admissible. Davidson, Judge, dissenting.

**12.—Same—Evidence—Credibility of Witness.**

Where the wife of the deceased had testified for the defense that the killing took place in the defendant's right of self-defense, there was no error to show in rebuttal her statement made shortly after the homicide that the killing was uncalled for. Following McDougal v. State, recently decided; distinguishing Marsh v. State, 112 S. W. Rep., 320.

**13.—Same—Date of Offense—Venue.**

Where appellant, in his motion for new trial, contended that the date of the death of deceased was not shown by the evidence, nor that the killing occurred in the county of the prosecution, but the contrary appeared from the record, there was no reversible error.

Appeal from the District Court of Kerr. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary

The opinion states the case.

*John R. Storms* and *Gilbert C. Storms,* for appellant.—On question of admitting in evidence the acts and conduct of the wife of the deceased: Barry v. State, 39 S. W. Rep., 692; Ex parte Kennedy, 57 S. W. Rep., 648; Stevison v. State, 89 S. W. Rep., 1072; Wallace v. State, 145 S. W. Rep., 925; Davis v. State, 155 S. W. Rep., 546.

On question of opinions: Mask v. State, 31 S. W. Rep., 408; Goldstein v. State, 171 S. W. Rep., 709; Wade v. State, 172 S. W. Rep., 215; Hambleton v. Southwest Texas Baptist Hospital et al., 172 S. W. Rep., 574.

On question of placing placard on door by wife of deceased: Stevison v. State, 89 S. W. Rep., 1072; Davis v. State, 155 S. W. Rep., 546; Streight v. State, 138 S. W. Rep., 742; Evans v. State, 172 S. W. Rep., 795.

On question of statement of wife of deceased that the trouble was

uncalled for: Drake v. State, 29 Texas Crim. App., 65, and cases cited in opinion.

Upon question of defendant's statement that he had no trouble with deceased: Hill v. State, 161 S. W. Rep., 118; Hernan v. State, 42 Texas Crim. Rep., 464; Parks v. State, 46 id., 100; Bailey v. State, 40 id., 150.

On question that defendant was indicted for felony: Bedford v State, 170 S. W. Rep., 727.

*C. C. McDonald,* Assistant Attorney General, *H. C. Geddie* and *Lee Wallace,* for the State.—On question of res gestae: Freeman v. State, 51 S. W. Rep., 230; Lockhart v. State, 111 S. W. Rep., 1024; Knight v. State, 116 S. W. Rep., 56; Eggleston v. State, 128 S. W. Rep., 1105.

On question of defendant's declarations: Mason v. State, 168 S. W. Rep., 115, and cases cited in the opinion.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at twenty-five years confinement in the State penitentiary.

The first bill complains of the action of the court in refusing to grant a continuance. By the bill it is shown that the attendance of all the witnesses named was secured except two: H. A. Furman and Claude Abblecrumlie. The facts stated appellant expected to prove by Furman would be material to his defense, and the question arises, did the State in its contest show that the witness was an incompetent witness and could not testify were he in attendance on court? In the contest the State swears that Furman had been convicted of a felony and sentenced to the penitentiary, in the District Court of Kerr County. The defendant contends that the only competent proof of this fact was a certified copy of the judgment and sentence. Generally this is true, and if Furman had been convicted in any other court than the District Court of Kerr County there might be merit in his contention. But a judge takes judicial notice of all judgments and decrees entered in his court, and when he had his attention called to the fact that Furman had been convicted of a felony, he judicially knew that fact to be true, and no proof, oral or otherwise, was required. Mayhew v. State, 69 Texas Crim. Rep., 187, 155 S. W. Rep., 191; State v. Savage, 151 S. W. Rep., 530; Blum v. Stein, 68 Texas, 608; Cyc., vol. 16, p. 915. And where the incompetency of a witness has been shown, it is presumed that he continues incompetent, and if a pardon is relied on to re-establish his competency, a copy of the pardon must be produced by the party so contending. Schell v. State, 2 Texas Crim. App., 30; Cooper v. State, 7 Texas Crim. App., 194.

As to the witness Abblecrumlie, as appellant set up in his application the same facts by Bess and Nailer, both of whom were in attendance, and neither used as a witness, there was no error in overruling the application for a continuance.

Vol. 79 Crim.-33

In the next two bills appellant objected to Dr. A. A. Roberts and E. A. Wied being permitted to testify that from three to five minutes after the time deceased was stabbed deceased came from the front door of his place of business and ran rapidly to him and said, "Doctor, do something for me quick, I have just been stabbed; Mr. Baker stabbed me; old man Baker stabbed me, I am turning blind right now, catch me, I am going to fall." That Dr. Roberts caught deceased, Dudley Laurie, as he fell. That deceased was perfectly sane, and died in a few minutes. The testimony was admissible both under the res gestae rule and as dying declarations.

An objection was made to permitting the State to ask Mrs. Etwell Laurie on cross-examination if shortly after the killing she did not close the door of the confectionery and place thereon a placard, "closed today." Many objections were urged to this testimony, the defendant not being present when the act was done. Mrs. Laurie was not a bystander, in a strict sense, in this transaction, according to her own testimony. Mrs. Laurie was a most material witness for the defendant, and testified to her husband being drunk, cursing and abusing her, and when her brother asked him to desist deceased cursed him and drew a gun on him; that she then picked up a shotgun, drew it on him and told him not to shoot her brother; that deceased laid his gun down and she laid hers down. She says she went to hunt for an officer but failing to find the officer, she found her father and asked him to hurry to the confectionery; that her husband, deceased, was trying to shoot Ivy, her brother, when her father replied, "He must not do that,—can't you all get along?" That her father, Furman and herself returned to the store; that after a few words passed deceased grabbed a gun and said, "I will kill all three of you." That Furman grabbed the gun, and in the scuffle it looked like deceased was about to get the gun away from Furman, when her father struck deceased; that deceased then turned the gun loose and went out the front door, and this is the time Dr. Roberts says deceased made the statement, appellant's testimony making such statement clearly res gestae of the transaction. It was right after the deceased left that Mrs. Laurie was seen to close the door and put up the placard, "closed today." The court, under the evidence of defendant, necessarily was required to charge if deceased assaulted appellant, or from his acts and conduct led appellant to believe he was about to assault Mrs. Laurie, or her brother, to acquit appellant. When the officers got in the house no guns were on the table, nor in sight, but were found lying under the mattress of the bed. The State's contention was that deceased had no gun and drew no gun, but the gun was all the time under the mattress on the bed, and the store was closed up so that matters might be arranged, but the officers got in the store too quickly. Of course, the defendant claimed that Mrs. Laurie had placed the guns under the bed after her father had stabbed deceased. Such being the issue in the case, the evidence was clearly admissible and the court did not err in so holding.

In bills 8 and 5 it is made to appear that the deputy sheriff, Henry Staudt, was permitted to testify that shortly after the cutting he approached appellant with the intention of arresting him, but before doing so or saying anything that would lead appellant to believe he intended doing so, he called appellant to one side and said to him, "I understand you had a little trouble a while ago," and appellant replied, "I haven't had a d——n bit of trouble." Witness then made a further statement, "Somebody cut or stabbed Dudley Laurie pretty bad," appellant replying, "I don't know a d——n thing about Dudley Laurie." That he then arrested appellant. Appellant was also questioned about this matter on cross-examination, and it is to the testimony of Mr. Staudt and the cross-examination of appellant that the exceptions were reserved. Appellant had testified on this trial and to a most vigorous case of self-defense and the defense of his daughter and son, and why should not his statements made a few minutes after the cutting be admissible to show he made no such claim at that time? He was denying all knowledge, and would be still denying it, we suppose, but for the fact that with his dying breath Henry Laurie had told Dr. Roberts and Mr. Wied who had cut him. It is true if his statement had been a confession that he committed the deed, our statute, if he was under arrest, would exclude it, but under no construction of the language can his words be construed into a confession that he committed the act, but instead is a most emphatic denial that he did so, and is wholly exculpatory. We examined this question in the cases of Whorton v. State, 69 Texas Crim. Rep., 1, 152 S. W. Rep., 1082, and Mason v. State, 74 Texas Crim. Rep., 256, 168 S. W. Rep., 115, and we do not deem it necessary to again discuss the question. In the Whorton case, we reviewed the authorities, and while our own decisions had not theretofore been uniform, yet the great weight of authority was that an exculpatory statement was not a confession within the meaning of the statute, and, therefore, the statute did not inhibit the testimony, and under the common law rules the evidence was clearly admissible. It is made clear that appellant was not under arrest when he made the statements, nor does his testimony make it plain that the officer intended to arrest him. Aside from this, under the evidence in this case the time elapsing and the facts and circumstances would render the testimony admissible as res gestae, under the authorities cited in section 341 of Branch's Criminal Law

As Mrs. Laurie was so material a witness for the defendant, her conduct on the occasion was admissible to prove the fact she did not go to the body of the deceased until late that night This was admissible as affecting the credit to be given the testimony of Mrs. Laurie. It was unnatural conduct if she cared anything for her husband, and while perhaps under the facts in evidence in this case, it would have but little weight, yet it was admissible to be given such consideration as the jury deemed proper. It was also permissible to prove by W. C. Coleman that immediately after the killing Mrs. Laurie had said to

him, "The killing was uncalled for." On this trial she testified to a state of facts which authorized and rendered imperative the killing of her husband by her father to save his own life, her life and the life of her brother, and as she was called as a witness by defendant to prove those facts, she could be impeached by contradictory statements made at a time near the killing.

As appellant testified in his own behalf, it was permissible, as affecting his credit, to prove that he had within less than seven years prior to this trial been indicted for a felony. Of course, the court should have and did permit him to testify that he was acquitted of the charge. There were no exceptions reserved to the charge of the court, and the court gave four of the six special charges requested ·by appellant. One of them was fully covered by the main charge of the court as well as by two of the special charges given. The other one refused was also fully covered in all its features, except that portion which would have instructed the jury, "that appellant had a right to go to the place of the cutting." This was not an issue in the case. The State's testimony and the defendant's testimony both show that appellant boarded at the place, and it. was his home, and had been ever since deceased and his wife had moved back to Kerrville and he had lived with them when they resided in Houston before returning to Kerrville. As no such issue was in the case, nor could the jury have inferred from any evidence heard that appellant did not have the right to go to the place, but the whole case proceeded on the theory this was his home, the fact the court failed to so instruct the jury presents no error.

Appellant makes a strong case of self-defense, and if this is not true, then the killing would take place under such circumstances as to reduce the offense to manslaughter. The State's case, to meet this, was mainly circumstantial, but we can not say that the evidence will not sustain the finding of the jury, when the jury and the trial judge who heard the testimony find the State's theory to be the true one.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge, dissenting.

### ON REHEARING.

### June 21, 1916.

HARPER, Judge.—Appellant has filed a motion for rehearing in this case, and an exhaustive brief on one or two questions. In the first instance he contends that Mrs. Laurie was but a mere bystander, and her acts and conduct not admissible. If it be conceded that she was but a mere bystander, there would be strength in the contention of appellant, and the authorities cited by him applicable. But if, as we conclude, she was not a mere bystander, having no part or parcel in the transaction, then the authorities cited by him and quoted from so copiously have no bearing on the case. Was she a bystander or a par-

ticipant in the tragedy? When this is determined the question is easy of solution. She testified, at appellant's instance, that her husband (deceased) was drunk on the occasion he had assaulted her by kicking her on the legs, twisting the skin off of her arms, etc. That he then drew a pistol on her, and said if she did not stop ·fussing at him he would shoot her. That she told him she was going to leave, and began to pack her trunk, when some words were had about her drawing the money out of the bank; that they were fussing when her brother came in, and deceased cursed her and called her a crazy s—n of a b—h; that her brother remonstrated, when deceased drew a gun on him, and she drew a gun on deceased and told him if he did not lay the gun down she would kill him, and deceased, her husband, laid the gun down. Certainly she was not a bystander up to this time, but a very active participant in the transaction. She says when her husband laid the gun down she went to look for an officer, but failing to find one, she went to her father (appellant) and reported the circumstances to him and told him that deceased would shoot Ivy, her brother, and had been trying to shoot her. That when they all got back to where deceased was, there was cursing going on, and her brother told her father (appellant) that deceased had called her a "crazy s—n of a b—h," and deceased replied, "She is that," and grabbed a gun and said, "I will kill all three of you," meaning herself, her brother Ivy, and her father (appellant), and at this time her father struck the fatal blow.

Regardless of her cross-examination, and the other testimony in the case, we are at a loss to understand how, under this testimony, he can claim that she was but a mere bystander, or that the law applicable to acts and conduct of mere bystanders could or would have any application to her. In Century Dictionary "bystander" is thus defined: "One who stands near; a chance looker-on; hence one who has no concern with the business being transacted." See also Webster's Dictionary, and this definition has received judicial approval. Gay Oil Co. v. Atkins, 140 S. W. Rep., 739; State v. Jones, 14 S. W. Rep., 946. The reason we did not discuss the decisions cited by appellant is because they referred to persons who were on-lookers and were in no sense interested in or a party to the transaction, and when we held, as we do hold, that she was not a mere bystander, the rules of law applicable to bystanders was and is wholly inapplicable, and the rules of law as announced in Cox v. State, 8 Texas Crim. App., 254; Blain v. State, 33 Texas Crim. Rep., 236; Baker v. State, 45 Texas Crim. Rep., 392; Smith v. State, 48 Texas Crim. Rep., 233; White v. State, 60 Texas Crim. Rep., 559, become and are applicable, and rendered the testimony of the acts and conduct of Mrs. Laurie admissible. The court made no holding that a material witness for the defendant could not be a bystander, but the acts and conduct and active participation in the transaction by Mrs. Laurie were such as showed that she was not a mere chance looker, but a participant in the entire difficulty.

Appellant also insists that taking into consideration the testimony

as to the way deceased treated his wife, Mrs. Laurie, the fact she did not go to his bedside until in the night ought to have but little weight, if any. This may be true. We are not passing on the weight to be given this testimony by the jury, but merely hold it admissible as showing the real condition of affairs, and to affect her credit as a witness, if it did so. The facts were all before the jury, and doubtless they gave it only such weight as it was entitled to receive at their hands under the evidence.

The case of Marsh v. State, 54 Texas Crim. Rep., 144, 112 S. W. Rep., 320, instead of holding that the statement of Mrs. Laurie made to Mr. Coleman inadmissible, is authority for its admissibility. Mrs. Laurie had testified that deceased said, "I will kill all three of you," and grabbed a gun, and those present were scuffling with him over the gun, when appellant struck deceased. This made a case of acting in self-defense. Now immediately after the shooting Mr. Coleman says Mrs. Laurie told him "the killing was uncalled for." In the Marsh case, supra, it was held: "We think the testimony complained of in bill No. 3 was admissible as a circumstance to rebut and throw discredit on the original statement made by appellant. It was a legitimate subject of cross-examination in that this fact, if true, was at variance with her statement of an insult by Baggett." The testimony held inadmissible, the court says: "It formed no part of the transaction, or conversation, or matter inquired of from Mrs. Marsh on her original examination. It *wholly related to another transaction* subsequent to the killing." In this case the testimony related wholly to this transaction, and was admissible to show she made a different statement immediately after the homicide to the one she testified to on the trial. We recently discussed this question in the case of McDugal v. State, and cited the authorities, and do not deem it necessary to do so again.

Appellant in his motion contends that the date of the death of deceased was not shown by the evidence, and that it was not shown that the killing occurred in Kerr County, Texas. H. W. Vowell and Clayt Love testified to his death occurring on the "8th day of last March." The case was tried in January, 1916, and this necessarily fixed the time as March 8, 1915, and appellant is mistaken in his contention that the record does not disclose that the tragedy occurred prior to the presentment of the indictment. If the evidence did not show venue in Kerr County, it would be too late to raise that question for the first time in this court by virtue of the provisions of article 938, C. C. P., no issue as to venue having been raised in the trial court. The entire record shows that the killing occurred in Kerrville, and the act creating Kerr County in 1856 provided that the place selected as the county seat should be called Kerrville, therefore we take judicial notice that Kerrville is in Kerr County.

We have discussed all questions appellant insists upon in his motion. The others were disposed of in the original opinion, and the motion for rehearing is overruled.

*Overruled.*

DAVIDSON, JUDGE (dissenting).—This case ought not to have been affirmed. In writing what I purpose to say I shall not go into the merits of the case so far as the sufficiency of the evidence is concerned. The jury allotted appellant twenty-five years in the penitentiary.

I do not, however, believe that a fair inspection of this record and legitimate conclusion reached therefrom will justify the verdict.

In my judgment the continuance should have been awarded for the absent witness Furman. The overruling of this proposition by the majority is based upon the idea that the trial court knew judicially that Furman had been years ago convicted of a felony, and, therefore, he was not a competent witness. If it be conceded that the court judicially knew of Furman's conviction, it would not, therefore, follow that the court judicially knew that he was an incompetent or disqualified witness. A record of conviction has been considered a necessary step to disqualify a witness. This witness was absent and his testimony was, as stated, of a very material nature. He was present and an eye-witness to the homicide, and would have testified, as shown by the application, to a clear case of self-defense. The trial court disqualifies this witness and this court sustains him in such disqualification because of a previous conviction of which it is said the trial court had knowledge. There was no issue tried by the court on this question. He may have been a competent witness restored to citizenship, so far as the record goes. In settling a serious issue of this sort against an accused, it certainly ought to be heard and the testimony ought to be clear that the witness was not at the time of the application for continuance a disqualified witness.

Another bill recites that shortly after and on the same day of the homicide the wife of deceased, over objection of appellant, was permitted to testify that she had placed a placard upon the outer door of the confectionery store owned by herself and her deceased husband, upon which was written the words, "closed today"; and further, she was permitted, over objection, to testify that she was at the front of the confectionery building and had the door closed and had a placard of pasteboard in a round shape, upon which were written or printed the words, "closed today," in large letters, and that she was trying to paste or fasten said placard upon the front door shortly after the killing. Various and sundry objections were urged to this, but the court admitted it, as he states in his explanation, because it "appeared to be res gestae." Another bill on the same question recites that while the widow of the deceased was upon cross-examination she stated that she did not go to see her husband at the undertaking parlor until the night after the killing in the daytime, and that she had placed a placard upon the front door of the confectionery store which had the words "closed today" on it. To this all sorts of objections were urged. The court admits this with the explanation that the State in offering this testimony stated it was for the "*sole*" purpose of affecting the credibility of the witness, and it was admitted for such purpose, as stated at the time,

and counsel for the defendant did not ask for a written charge limiting the purpose for which the jury might consider the same. In one bill the court admits the testimony on the ground that it was res gestae; in the second he sustains the purpose of the State in offering it and admitted it for the purpose of affecting the credibility of the witness, and for that purpose only, and emphasizing this he qualifies further, that appellant did not ask a written charge limiting this testimony. If it was res gestae, a charge limiting the testimony was not required, because in that instance it would be original evidence. If offered for the purpose of affecting her credibility as a witness, it was the duty of the court to limit it to that purpose and see that it was not used as original testimony against defendant. Appellant was not present and had nothing to do with it; knew nothing about it; in fact, the record shows he was in the hands of the officers under arrest. There are so many reasons why this testimony was not admissible it would seem almost superfluous to state them. This was the act not of the defendant but of the wife of deceased. Defendant knew nothing of it; had no concern with it; was not aware of it, and it was the act of a party in his absence closing the door of her confectionery which was owned by her husband and herself; it was their residence, the confectionery being in the front part of the house, they residing in another part of the edifice. Whether this be the act of a bystander or not, it is the act of a third party with which defendant had no concern and no connection. It could not be introduced on the theory that it was the act of a co-conspirator, for from that standpoint the · object of the· conspiracy, if one existed, had been accomplished, the deceased was dead. The act or statement of a conspirator made after the completion of the conspiracy is not admissible against one of the other co-conspirators in his absence. He was unaware of the act or statement of the other conspirator after the transaction had ended. This I understand to be the settled rule. It, therefore, could not be original testimony, so far as defendant was concerned. The parties after the homicide had all scattered and gone; they were not at the house where the killing occurred, which was in a bedroom in the rear part of the confectionery store. The business was carried on in the name of the wife of deceased. Deceased had just been killed and carried to the morgue, or at least was not in this confectionery or any other part of the house occupied by himself and his wife. It is, therefore, not res gestae It was the act of third parties in the absence of the defendant, without his knowledge, consent or concurrence. But when the matter came again in the second bill of exceptions the court qualifies it by stating that it was admitted to affect the credibility of the witness. Wherever testimony is introduced to affect the credibility of a witness, which might be damaging or illegal, it is the duty of the court to guard the jury against using it for illegitimate purposes; in other words, instruct the jury that it can be considered only for the purpose for which it was introduced, that is, to affect the credibility of the witness. This testimony should not have

been admitted either as res gestae, or to affect the credibility of the witness. Here was the widow of the deceased closing the house where the business of her deceased husband and herself was carried on; where they had been living, in part of which they resided as their home. Shortly after the death of her husband she closed the doors of the house against the curious and the outside world and as evidence of the fact that the business was that day suspended. It is the first time, so far as the writer is aware, that the closing of a business house where one of the interested parties had died should be taken as evidence of a want of veracity which would subject one of the owners of the house to impeachment for want of truth. It is a custom which is a part of the current history of our race and people, that business houses and private residences are closed to the outside world when a member of the business house or a member of the family has died. It is not only expedient but it is regarded by all right thinking people as being the ethical and proper thing to do. Had she carried on her business with wide open doors with her husband lying nearby dead but a short time, there might have been some reason for saying there was something wrong and unnatural that a wife would so act under such circumstances. This might have been the subject of criticism, showing that she was indifferent to the fact that her husband was so recently dead. But now we have solemnly adjudicated, and sustained by a court of last resort, that proper respect for the memory of the dead husband should be taken as evidence of impeachment of the truth and veracity of his wife who with sorrow upon her life and in the shadow of bereavement had closed the doors to the outside world. The writer does not understand this character of reasoning, or how such charge should be imputed under such circumstances. Evidence of proper ethical act by the wife of the deceased ought not to be solemnly adjudicated to be evidence of her want of veracity. I do not believe such ruling should have been held by this court or made by the trial court.

There is a fact or two thrown into the case which I suppose was done to aid the State and the record in this case. The widow testified that there had been trouble that morning between herself and her husband and he threatened to kill her, got a pistol, and not only that but tried to kill her brother, and that she went for the sheriff, and failing to find him, informed her father, who was also a resident of the same house, of conditions, and the father went to where the parties were. She further testified that deceased got a gun with a view of killing her father, and while Furman and deceased were scuffling over the gun deceased was trying to point the gun towards her father to shoot him, and that her father jerked out a small pocketknife and inflicted one wound upon deceased from which he died. This testimony placed a couple of guns and a pistol in sight in the room. When the officers entered the room some time afterward these guns had been put between some mattresses or at least were so found. Of course, the State's contention was that the story about the guns being used in the difficulty

was not true, and that this evidence of the guns being between the mattresses was evidence of the fact that her testimony was not true. This was legitimate testimony to show if they could before the jury that with reference to this matter she may have been mistaken or testified falsely.    She explains this by stating that after the difficulty and after all the parties had left the room she took the guns and put them between the mattresses, where they were subsequently found.   These facts went before the jury for what they were worth, to be weighed by them. They could attack her testimony that the guns were in sight and sought to be used during the difficulty by showing they were not so used.   She explained in consonance with her other testimony that she hid the guns, but be that as it may, this testimony was of benefit to the State, it occurs to the writer, and it put her in the attitude, or it might have been so argued, of placing the guns where she placed them, was a fact favorable to the State both to contradict her as to her first statement and to show her sympathy for the State by placing the guns where they could not be used, and, therefore, impugning the question of self-defense, so far as that phase of the evidence is concerned.   But how this could justify the introduction of evidence that the widow closed the business and private residence subsequently by placing a placard on the door announcing the house was closed I do not understand. "Harmless error" seems not to have been thought worthy of consideration in this case, because appellant received a verdict of twenty-five years for murder.   He did not receive the minimum punishment of five years for that offense.   That there was manslaughter in the case under the facts is not to be disputed, and the majority opinion admits it was a strong case of self-defense, and yet appellant received twenty-five years, which, at his age of fifty-six, means more than his lifetime.   The record shows that he is lame and sick, and suffering with rheumatism and other ills to which flesh is heir.

I do not care to go into other matters of the case and discuss them. It is useless to have said what I have said, but it occurs to me as being so novel and so out of the ordinary and so unjust, that the evidence of the sorrow of the widow closing the business house and private residence against the outside world should be held as evidence of a want of credibility from the standpoint of veracity or truth, that I could not sanction the affirmance of this case from that standpoint.   That it was damaging is manifested by the verdict.   I do not believe it should be entertained that a surviving relative of a deceased member of the family should have his or her veracity and standing in the community attacked and held up to scorn because of the ordinary everyday respect paid to the memory of a deceased relative.   This is not our civilization.   It does not belong to our people, and I would not subscribe to that.   I would have dissented on that proposition if on no other.   There are other questions in the case, but I simply desired to make the few above remarks.   This judgment ought not to have been affirmed.   It ought to have been reversed and appellant awarded another trial.   I do not

believe a man should be sent to the penitentiary except upon what ought to be a legal trial.