Joseph VANWRIGHT, Appellant,

v.

The STATE of Texas, Appellee.

No. 42578.

Court of Criminal Appeals of Texas.

Jan. 7, 1970.

Rehearing Denied April 29, 1970.

Second Rehearing Denied June 17, 1970.

Goodwin & Matheny, by Joe B. Goodwin, Beaumont (on appeal only) for appellant.

W. C. Lindsey, Dist. Atty., Lawrence J. Gist, Asst. Dist. Atty., Beaumont, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is murder; the punishment, life.

Appellant's first ground of error is that the court committed fundamental error in failing to arraign the appellant as provided for in Art. 26.01, Vernon's Ann. C.C.P.

Art. 44.24 V.A.C.C.P. provides in part that this court shall presume that venue was proved in the court below and that the defendant was arraigned, " * * * unless such matters were made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record."

In construing this portion of the prior statute (Art. 847 C.C.P., 1925) it has been repeatedly held that this court will presume that venue was proved where no issue as to venue was raised prior to the filing of the motion for new trial. Harp v. State, Tex.Cr.App., 383 S.W.2d 176; Thompson v. State, 72 Tex.Cr.R. 6, 160 S.W. 685;

Tullos v. State, 99 Tex.Cr.R. 551, 270 S.W. 1021; Lawrence v. State, 117 Tex.Cr.R. 228, 36 S.W.2d 1018; Doyle v. State, 168 Tex.Cr.R. 458, 329 S.W.2d 286; Baker v. State, 79 Tex.Cr.R. 510, 187 S.W. 949; Thompson v. State, Tex.Cr.App., 393 S.W. 2d 922.

Davis v. State, 70 Tex.Cr.R. 563, 158 S. W. 283, holds that where the judgment recited that a plea of not guilty was entered by the defendant, and he made no objection that he had not been called on to plead in the trial court until he raised the point on a motion for new trial, after verdict, his failure to plead, if in fact he did not do so, was waived.

We see no reason why the same rule should not apply where the question of whether the defendant tried on his plea of not guilty had been arraigned was raised for the first time on motion for new trial after verdict.

Article 26.02 V.A.C.C.P. provides:

"An arraignment takes place for the purpose of fixing his identity and hearing his plea."

In Eckels v. State, 153 Tex.Cr.R. 402, 220 S.W.2d 175, this court said:

"If appellant knew that he was not arraigned and did not want to waive arraignment, he should have raised the question before the conclusion of the evidence and given the trial court an opportunity to have him arraigned."

The ground of error is overruled.

Ground of error No. 2 complains that the trial court committed reversible error in refusing to allow the defendant to testify concerning his prior trouble with the deceased and prior threats and prior acts of violence against him made by the deceased, all of which were circumstances going to show the condition of the mind of the accused at the time of the homicide, all in violation of Art. 1257a Vernon's Ann.P. C.

This ground of error relates to a number of questions, some of which were answered before any objection was made and some over the objection that the question was not tied down as to time and place.

The incidents referred to in most of the questions occurred some 8 years prior to the killing. No continuous course of ill treatment was shown.

Assuming that the ground of error complies with Art. 40.09(9) V.A.C.C.P., which requires that the brief "shall set forth separately each ground of error * * *," the previous acts and difficulties between appellant and the deceased who had since been living together as common law husband and wife, with no evidence of misconduct, quarrels, threats or violent disposition for eight years, were too remote and under the prior decisions of this court were properly excluded. Davis v. State, 65 Tex.Cr.R. 271, 143 S.W. 1161; Williams v. State, 67 Tex.Cr.R. 590, 150 S.W. 185; Trammell v. State, 145 Tex.Cr.R. 224, 167 S.W.2d 171.

We note in this connection that the enactment of Art. 1257a V.A.P.C. did not extend the rules of evidence. Childers v. State, 150 Tex.Cr.R. 453, 202 S.W.2d 930; Wiggins v. State, 115 Tex.Cr.R. 434, 27 S. W.2d 236.

The same rule of remoteness applies to the exclusion of testimony of the witness Esther Jones as to prior difficulties between appellant and the deceased in the year 1960.

■ Ground of error No. 4 complains that the court erred in allowing the District Attorney to read, at the punishment hearing, the record of misdemeanor convictions which were not in Courts of Record as well as arrests which did not result in convictions, and hearsay statements as to the details involved in the alleged arrests.

Assuming that the ground of error complies with Art. 40.09(9), supra, in the absence of any objections we find no revers-

ible error reflected. We note further that appellant agreed that the entire list from the record relating to the misdemeanors which the state offered in evidence be read if any part was.

■ The remaining ground of error relates to the failure of the court to charge on self defense.

Appellant's defense was accident. We find no evidence in the record which would raise the issue that appellant shot the deceased in defending himself against an unlawful attack, real or apparent, giving rise to apprehension of losing life or suffering serious bodily injury.

■ We further note that the objections to the charge and special requested charges are not shown to have been presented before the court's charge was read to the jury, as required by statute. Arts. 36.14 and 36.15 V.A.C.C.P.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Judge.

In view of the fact that Art. 1257a, V. A.P.C., relates to evidence "which may be considered by the jury in determining the punishment to be assessed," and the fact that the evidence excluded was offered at the guilt or innocence phase of the bifurcated trial (Art. 37.07, Sec. 2(a), V.A.C.C. P.) that portion of our original opinion wherein we held that the evidence as to certain previous acts and difficulties was too remote is withdrawn.

The appellant introduced into evidence the written statement made by him to Officer Landry after he had been duly warned by the justice of the peace and Officer Landry of his rights. The written statement dated at 8:05 p.m., January 9, 1968, reads:

"My name is Joseph Van Wright; I am a negro male 38 years old. I live at 735 Dallas Avenue, Port Arthur, Texas. I work for Port Iron Supply on West 7th Street in Port Arthur, Texas. I am not married but I have lived with Justina Phillips, a female colored, 37, for about 14 years as man and wife. I worked only about three hours yesterday because of the rain and I did not work at all today. Justina was also off yesterday, and she went to town to pay the bills. When I came home yesterday, she told me that she had gave her cousin Sonny Shedrick one dollar for gas and he had taken her to town to pay the bills. I found out later that Sonny did not take her to town, but his brother they call Wolf had took her to town. We had a fuss about that today when I told her that she had lied to me about Sonny taking her to town. Justina went to work this morning about 10:00 a.m. and I went to Ben DeJohn's store and got me a pint of sherry wine and then went to Jessie's Cafe on 7th Street and had a few drinks during the day. I came home a short time after Justina came home from work and I guess that was about 5:30 p.m. This was when I told her about what I had found out about Sonny and Wolf and we started arguing. I have a 25 caliber automatic pistol that I keep in my record player and I picked it up and put it in my left front pocket. I did that to scare Justina because she is always scared of me when she thinks I have a gun or a knife in my pocket. About 7:00 p.m. I told her to go with me to Howard Simmons' house to use his phone and call Sonny and ask him if had taken her to town yesterday. Howard lives next door so we went to his house and used his phone to call Sonny. Justina called Sonny's house and he was not home so she talked to his wife. About the time she was about to hang up the phone I took it away from her and Sonny's wife said Wait a minute, Wolf just came in; maybe he can tell you. So I talked to Wolf and he said that he was

one that had taken her to town, so I hung up the phone. Justina told Howard while we were in his house that I had a gun in my pocket for her. We left and went back home and we were fixing our bed when I asked her again why she had lied to me about Sonny and Wolf. She said I wanted to start another argument and she grabbed my pocket that the gun was in. I don't know how the gun got out of my pocket but I heard a shot and Justina fell on the floor under the kitchen table and I saw some blood. I went next door to Ellen Banks' house which is in the same building with my house, just a wall between the two apartments. I asked her to call the law, that Justina was shot. I left and went to Jessie's Cafe on 7th Street and told some people there that I had shot my wife or something like that. I told them to call an ambulance and about that time I heard the police and ambulance coming, so I went back to my house and I showed the officers where I had put the gun and he said that he would get it. I had put the gun back on the record player where I always leave the gun."

While visiting in a tavern with appellant about 5:30 p.m., Sonny told him that he let Wolf take the deceased to town. The appellant replied: "Well, she told me a damn lie," and that, "He just didn't like for a woman to lie to him," and later said, "Well Goddam, I am going to kick her G_____ d_____." Then they left and Sonny let appellant out of the car at his house. When Sonny got home about 7:15 or 7:20 p.m., he was told that the appellant had killed the deceased.

Howard Simmons, a neighbor of the appellant and deceased, testified that they came to his house to use the telephone about 7 or 7:30 p.m., January 9, 1968. After the appellant was told by Wolf over the telephone that he took the deceased to town, the appellant told her: "I'm going to kill you," and the appellant and deceased returned to their house. In a short time Simmons heard a gunshot and then saw appellant coming out of his house. The appellant then said to Simmons, "Well, call the law, I have just killed Justina."

After Ellen Banks, who lived in one side of a duplex with the appellant and the deceased on the other side, heard a shot; she went to the front door. She asked the appellant where the deceased was and he said, "I shot her. * * * Where do you think she is? She's in the kitchen on the floor."

Appellant testified that the deceased told him Monday evening that she went with Sonny to pay the bills. On appellant's way home Tuesday evening about 6 p.m., Sonny told the appellant that his brother, Wolf, and not he, took the deceased to pay the bills Monday. Appellant testified that he told Sonny, "I'm gonna get on Justina about that when I get home," and that he got mad and angry at the deceased. When Justina still insisted it was Sonny, they went to Simmons' house, next door, and telephoned Wolf, who told appellant he took Justina. Appellant also testified that while at Simmons' house he heard Justina tell Simmons that he had a gun in his pocket but that he got the pistol and put it in his pocket after they got home because there was "fixing" to be an argument. The argument soon got worse. They began struggling over the pistol and it discharged and fell to the floor.

At the close of the testimony of the appellant, he asked the court for permission to perfect his bill of exception. The court replied: "This will be one bill for all purposes."

In perfecting his bill of exception, the appellant testified that the deceased in 1960 struck him on the head with a pistol and he fell, and then she shot at him; and for which she paid a $25.00 fine. He further testified that on another occasion she struck him with a lead pipe but he did not state when or where. Appellant also testified that the deceased had caught him

in company with another woman at the time she shot at him and also when she struck him with a lead pipe.

█ Appellant's written statement introduced by him; his own testimony at the trial, and his statements and conduct as shown by the testimony of the state's witnesses was that just minutes before the shooting he said he was going to kill the deceased, and in both his written statement and sworn testimony at the trial he said he got the pistol and put it in his pocket which was only a few minutes before the deceased was shot.

Under these facts and circumstances, the refusal to admit the testimony complained of as shown in perfecting his bill of exception was not reversible error.

The appellant's motion for rehearing is overruled.