Horace WHEELER, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–81–00387–CR.

Court of Appeals of Texas, Dallas.

March 8, 1982.

---

1. Tex.R.Civ.P. 386, 437, and 21c.

Edgar Mason, Dallas, for appellant.

Deborah Browning, Asst. Dist. Atty., Dallas, for appellee.

Before GUITTARD, C. J., and WHITHAM and GUILLOT, JJ.

GUILLOT, Justice.

This is an appeal from a conviction of burglary of a habitation for which the appellant was sentenced to forty-five years in prison. Because of the reasons below we affirm.

On April 21, 1980, between the hours of midnight and 6:00 a. m. the appellant, Horace Wheeler III, burgled the home of Dorothy Hooper, taking a $941 I.R.S. refund check, a gold watch, a .38 caliber pistol, her driver's license, and fifty dollars in cash.

The next day appellant appeared at the fines bureau of city hall to pay an old traffic ticket fine. When the clerk put appellant's name into the computer, it showed he had four misdemeanor arrest warrants out for failure to appear in municipal court on the days his four cases had been set. The clerk notified a police officer of the warrants who immediately arrested appellant and informed him of his *Miranda* rights.

While under arrest, appellant was searched and some of the fruits of his burglary were discovered. Within an hour he was arrested for burglary of a habitation and his rights were again read to him.

During the next four hours the police attempted to locate the complaints and warrants which the computer showed to be outstanding. They never found them. At 5:00 p. m. appellant was arraigned before a city magistrate. Although the record shows he understood all of his rights, nevertheless, he made no request for an attorney. At 5:30 p. m. he was taken to the interview room by officer Jack Williams for an interview that lasted approximately 45 minutes.

Officer Williams testified that he first ascertained that appellant had been arraigned and understood his ·rights, and again informed appellant he was under arrest for burglary of a habitation. The record reflects that appellant freely discussed the burglary with officer Williams and that after fifteen minutes had gone by, he confessed, and Williams prepared a confession for appellant, advised him of his rights, and gave the confession to appellant to sign. Appellant signed the confession which stated that he had outstanding traffic tickets which he could not pay and that he burgled Mrs. Hooper's house to obtain the money to pay the tickets.

On a motion to suppress, the State agreed not to introduce the fruits of the burglary but did prevail in persuading the court to allow the introduction of the confession.

In his first ground of error, appellant contends the trial court erred in admitting his confession because it was the fruit of an illegal arrest.

█ We agree with appellant that his initial arrest at the fines window was illegal because the State failed to produce valid warrants and affidavits supporting those warrants. Normally, in challenging the grounds of issuance of a warrant the burden is on the defendant to put the warrant and supporting affidavits into evidence. *See Haynes v. State*, 468 S.W.2d 375 (Tex. Cr.App.1971), *cert. denied*, 405 U.S. 956, 92

S.Ct. 1180, 31 L.Ed.2d 233 (1972). But where the State agrees that the warrants and affidavits do not exist or that they are lost, it is not incumbent upon the defendant to produce them in order to question the legality of his arrest. By virtue of the warrants and affidavits being lost or nonexistent, it would be an impossible burden for the appellant to produce them. *Logan v. State*, 482 S.W.2d 229 (Tex.Cr.App.1978), cited by the State, is inapposite because in that case the affidavits and warrants did exist or were capable of being found.

█ Even though we hold that appellant's initial arrest was illegal, we face the underlying question: was the confession nevertheless voluntary under the circumstances shown? If voluntary, the confession is admissible; if involuntary, inadmissible. The answer to the question lies in the distillation of constitutional law derived from the cases dealing with the exclusionary rule of evidence. The gist of the exclusionary rule is that when police make an illegal arrest or illegal search, the fruits of their arrest or search cannot be admitted into evidence. It has often been held that the exclusionary rule's purpose is to deter the police from lawless conduct and to close the doors of courts to the use of any evidence unconstitutionally obtained. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Knowing the purpose of the rule, we must analyze the facts of this case in light of Supreme Court decisions.

█ The first constitutional test to apply under the Fourth Amendment is whether "the connection between the lawless conduct of the police and the discovery of the evidence has become so attenuated as to dissipate the taint." *Wong Sun*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), quoting *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). The Supreme Court has established guidelines to follow in tracking the "attenuated evidence." It states that the following are important factors:

1. The giving of *Miranda* warnings;
2. The temporal proximity of the arrest and the confession;
3. The presence of intervening circumstances; and, particularly,
4. The purpose and flagrancy of the official misconduct.

*Brown, supra,* 422 U.S. at 604, 95 S.Ct. at 2262.

In applying these guidelines we must remember that the exclusionary rule has been restricted to those "areas where its remedial objectives are thought most efficaciously served." *United States v. Ceccolini,* 435 U.S. 268, 275, 98 S.Ct. 1054, 1059, 55 L.Ed.2d 268 (1978), quoting *United States v. Calandra,* 414 U.S. 338, 342, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). In other words, before we apply the exclusionary rule and "penalize police error, . . . we must consider whether the sanction serves a valid and useful purpose." *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974).

Because the guidelines mentioned above are set forth in the *Brown* decision, it would help to discuss briefly the facts of that case. Two police officers in Chicago broke into Brown's apartment; searched it; and arrested Brown, all without probable cause or a warrant. They drove Brown to police headquarters during which time they began interrogating him about the death of one Corpus. Upon their arrival they placed Brown in an interrogation room and read him his *Miranda* rights. They then informed him they knew of an incident that occurred in a pool hall, when Brown, angry at being cheated, fired a pistol into the ceiling. They confronted Brown with the fact that the bullet lodged in the ceiling was being compared with the one from a homicide victim's body. At this point Brown signed a statement implicating another in the killing. Several hours later, at about 2:30 a. m., he gave a second statement similar to the first with slight variances regarding his personal background. Finally, after fourteen hours of questioning and detention, Brown was arraigned before a magistrate. The Supreme Court held that the state had failed to show that the statements by Brown were admissible under *Wong Sun.*

Applying the factors set out in *Brown,* there can be no question that appellant was given his *Miranda* warnings on several occasions during his detention. The facts reveal that, unlike in *Brown,* appellant was not interrogated immediately upon his arrest. Indeed, the interrogation began four hours later. Again, unlike *Brown,* the questioning was after appellant had been arraigned. Finally, unlike *Brown,* the questioning was brief. Furthermore the record reveals no intervening circumstances between the arrest and the confession.

The purpose and flagrancy test is of particular importance to the case at bar. Inasmuch as its primary purpose is deterrence, we must ask ourselves: Will the application of the exclusionary rule in this case deter police from arresting a person whom they have been told has outstanding misdemeanor warrants for his arrest? The record reveals that the computer print-out showed at least four misdemeanor warrants had been issued for appellant since 1977. The record further reveals that the arresting officer had been told these warrants were issued before the arrest was made. It further reveals that from 1:30 p. m. to 5:00 p. m. the police searched for the warrants and the affidavits. Again unlike the facts in *Brown,* the record in the present case does not reveal that no warrants had been issued, that the police had broken into appellant's home, or that they had arrested appellant in circumstances calculated to confuse, surprise, and frighten him. In short, the case at bar is factually dissimilar to *Brown.*

The record reveals that the arrest of appellant was made in good faith by the police officer. Hence, the deterrence rationale of the exclusionary rule loses much of its force. *Michigan v. Tucker, supra.*

Finally, under the guidelines of *Michigan v. Tucker,* we find that the police conduct in arresting appellant was neither a willful nor a negligent deprivation of appellant's

rights. *See Michigan v. Tucker, supra,* 417 U.S. at 447, 94 S.Ct. at 2367.

We hold that the challenged confession is sufficiently "attenuated as to dissipate the taint" of the illegal arrest. We further hold that the exclusionary rule's purpose would not be served by employing it in the instant case. Consequently, we hold that admission of the confession was not a violation of appellant's rights under the Fourth Amendment.

 In his next two grounds of error, appellant contends the trial court erred in failing to submit appellant's requested charges on the voluntariness of his confession and on circumstantial evidence. The record, however, fails to show whether the requested charges were brought to the attention of the trial court before the charge was read to the jury. Thus, appellant has failed to preserve any error and nothing is presented for review. *See Vanwright v. State,* 454 S.W.2d 406 (Tex.Cr.App.1970); *Berlew v. State,* 88 Tex.Cr. 241, 225 S.W. 518 (1920).

Appellant next contends that the court erred in permitting the State to elicit an oral confession to an extraneous offense which did not meet the requirements of article 38.22, § 3(c), Tex.Code Crim.Pro. Ann. (Vernon Supp.1982). The record shows that appellant's counsel inquired into the matter on cross-examination; and consequently the State was properly allowed to delve into it on redirect. *Trammell v. State,* 145 Tex.Cr. 224, 167 S.W.2d 171 (1942).

Appellant next contends the court erred in overruling his hearsay objection to testimony that other burglars often were confused as to how they committed burglaries. Appellant made no hearsay objection in the trial court and, thus, nothing is presented for review. *Gooden v. State,* 576 S.W.2d 382 (Tex.Cr.App.1979).

Appellant next contends that the court erred in permitting the State to elicit testimony from a witness that constituted an attack on the defendant through his attorney. No such objection was made below and nothing is presented for review. *Gooden v. State, Ibid.*

Appellant finally contends that the court erred in overruling his objection to the argument that the stolen property which was returned to the complainant had come from appellant. The record reveals that this argument was a reasonable deduction from the evidence and was not improper. *Todd v. State,* 598 S.W.2d 286, 296 (Tex.Cr.App.1980).

Affirmed.