### Will Prater v. The State.

#### No. 688. Decided October 19, 1910.

**1.—Assault to Murder—Self-Defense—Charge of Court.**

Where, upon trial of assault with intent to murder, the evidence showed that the prosecuting witness struck the first lick at defendant and the latter knew nothing of what happened after that, and if he struck prosecuting witness was in an unconscious condition, the court should have submitted the law of self-defense.

**2.—Same—Newly Discovered Evidence.**

Where, after conviction of assault with intent to murder, the defendant's motion for new trial showed that he was in no condition either physically or mentally to have made the necessary preparation for trial, or to ascertain who were to be witnesses in the case, this was in the nature of newly discovered evidence and a new trial should have been granted.

Appeal from the District Court of Jefferson. Tried below before the Honorable W. H. Pope.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—The appellant was indicted and convicted of an assault with intent to murder and his punishment assessed at confinement in the penitentiary for a period of seven years. An indictment was returned in the District Court of Jefferson County against the appellant charging him with making an assault upon one Alex Brown and John Orby. In the trial of the case it was shown that about the 5th of September, 1909, Brown, Orby and some other parties had been to Beaumont and were returning to their place of residence and they stopped at the store of one Steve Girolomo. All these parties were foreigners, being Russians and Polanders and had been hired by Brown to work for him. It was about dark when they got to this store, where Brown says he stopped to get some meat. There were three or four negroes at the store, one of them the defendant Will Prater. A difficulty sprang up and the testimony is very uncertain as to how the difficulty came up or as to who started it between the negroes and the white people. However, when the difficulty was over, it was found that Brown and Orby were both badly cut as well as the defendant Prater, the defendant Prater being more severely injured than the balance of them. He was cut and knocked on the head and was rendered unconscious and was supposed to be dead. Dr. Williams testified that he was called to see the defendant along some time about the first of September and that he had him in charge some eighteen or twenty days; that he was in the hospital in Beaumont, and the doctor said, was absolutely in an unconscious condition when he first saw him and that he remained unconscious for some twenty-four hours. He said Prater had been struck about the head with some blunt instrument several times and that there were a couple of cuts on his head and that he had a stab wound of a serious nature; that it penetrated the lung cavity and he was cut once or twice on the arm; that the wound in his side cut one rib in two and was a serious and dangerous wound. He said he attended him some eighteen or twenty days when he pronounced defendant convalescent and he was removed from the hospital to the jail. The defendant was brought to trial some four weeks after the injuries were inflicted, had been in jail some eight or ten days before the trial and had not fully recovered from his wounds and injuries. It was claimed and testified to by Orby and Brown that defendant was the party who cut both Orby and Brown. Brown testified that he heard some squabbling out at the wagon and he went from the store out there and saw the defendant on top of the wagon and that he caught hold of him and pushed him away and told him he had no business there, when he claims he was immediately seized upon and cut. As to when Orby was cut, or which one of the three negroes cut Orby the testimony is very indefinite. On

the trial of the case the defendant took the stand and testified as follows: "I was out by Mr. Steve's and this fellow went up there, and I did say something to him—to that fellow with the white shirt on—about the accordion, and Mr. Brown walked up to me and told me to shut up my mouth and he struck me right in the mouth and I stepped off the gallery and somebody walked out with a hatchet or a hammer or something, and that is all I know, because I never had no knife and I didn't know when I got cut myself and I didn't know anything until the next day when I found myself at the hospital, and I don't know anything about it, and I know I didn't cut the man because I didn't have anything to cut him with, and as far as fighting with that fellow, I didn't have no fight with him because I was talking to him about the accordion and Mr. Brown told me to shut and hit me right away."

The court in his charge to the jury submitted the case to the jury on assault to murder and aggravated assault but failed to charge the jury on the question of self-defense. We are of opinion that under the facts of the case the defendant was entitled to a charge upon the question of self-defense. While it is true the defendant denied cutting the parties, yet, he says Brown struck the first lick and he knew nothing of what happened after that. If in his unconscious condition he struck Brown and Orby while they were beating him, it would certainly be a defensive act on his part and the court, we think, should have submitted this issue to the jury. Again, several parties were indicted for these offenses besides the defendant and tried upon the principle that they were all there acting together in the commission of the offense. If Sellers or the other party struck Brown or Orby after they had made an assault upon Prater it would be in self-defense and would have inured to defendant's benefit and for that reason the charge ought to have been given.

There are several other questions raised in the record, but in view of the conclusion we have reached, which we deem unnecessary to notice. Under the facts of the case, it might be stated that the defendant was entitled to a new trial on the ground of newly discovered evidence. The facts, we think, practically render the defendant in no condition either physically or mentally to have made the necessary preparations for trial, or to ascertain who were to be witnesses in the case and for this reason a new trial should have been granted.

For the errors indicated the judgment will be reversed and the cause remanded and it is accordingly so ordered.

*Reversed and remanded.*

RAMSEY, Judge.—I concur in the result.