## W. P. CARDEN v. THE STATE.

### No. 1200. Decided May 17, 1911.

### Rehearing Denied June 21, 1911.

**1.—Murder—Manslaughter—Apparent Danger.**

Where, upon trial of murder, the court in his charge on manslaughter used the language, "not in defense of himself against an unlawful attack," the same, while not reversible error in the absence of a special charge, was improper under the facts showing apparent danger.

**2.—Same—Charge of Court—Self-Defense—Apparent Danger.**

Where, upon trial of murder, there was evidence raising the issue of apparent danger, the court should have submitted this issue in his charge on self-defense.

**3.—Same—Practice in District Court.**

It is immaterial what the view of the trial judge may be as to the truth or falsity of an issue presented by the testimony, the matter should be submitted to the jury.

**4.—Same—Charge of Court—Provoking Difficulty—Converse Proposition.**

Where, upon trial of murder, the charge of the court submitted the issue of provoking the difficulty as to defendant's intent in going to the place of the difficulty, he should have also submitted the converse proposition.

Appeal from the District Court of Travis County. Tried below before the Hon. George Calhoun.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*E. T. Moore,* for appellant.—On court's failure to charge on apparent danger: Shannon v. State, 35 Texas Crim. Rep., 2; Winters v. State, 37 Texas Crim. Rep., 582; Carter v. State, id., 403; Tilmyer v. State, 58 Texas Crim. Rep., 562; McMillan v. State, id., 525; Gray v. State, 55 Texas Crim. Rep., 90.

*C. E. Lane,* Assistant Attorney-General, and *Jas. R. Hamilton,* District Attorney, for the State.—On question of apparent danger: Waters v. State, 54 Texas Crim. Rep., 322; Clark v. State, 56 Texas Crim. Rep., 293; Hickey v. State, 45 Texas Crim. Rep., 297.

HARPER, JUDGE.—In this case under an indictment charging murder appellant was tried for manslaughter. He was convicted and sentenced to four years confinement in the penitentiary.

1. The appellant presents but two questions in the record. One, that the court erred in his charge on manslaughter, in that the court instructed the jury that if appellant "in a sudden transport of passion aroused by adequate cause, as the same has been hereinbefore explained, and not accidentally, and not in defense of himself against an *unlawful attack,*" etc., he would be guilty of manslaughter. The contention being that the testimony did not tend to show that deceased had made an *actual attack,* but that the testimony from defendant's witnesses was that the deceased, after he and appellant had a few words, said: "It's a damn lie, and I won't take nothing back;" stepped towards appellant and threw his right hand under his coat, presenting apparent danger to appellant, viewed from his standpoint, taking into consideration the reputation of deceased. In the absence of a special charge, this, perhaps, would not alone present such error as to call for a reversal, yet the criticism, we think, is well founded, and the court should have presented the matter as made by the evidence in the case.

2. Appellant's other contention is that the evidence called for a charge on self-defense from three different viewpoints: first, accidental killing, which was correctly presented; second, conduct in the light of communicated threats, which was also given; and, third, apparent danger, judged of from the point of view as it reasonably appeared to appellant at the time, from the words, acts and conduct of deceased, which was not given. A State's witness, Tom Hamby, testified that in the afternoon deceased and appellant had some words, and deceased had walked behind the bar where he had his pistol and said to appellant: "If you are a brother of Tom Carden you are a son-of-a-bitch," when appellant turned and walked out of the saloon. This was about five o'clock in the afternoon. Tom Carden testified: "I looked around and Pres Carden and Reeves were in the second doorway, and I saw Stanford move out from the bar, probably two or three feet, and appellant (Pres Carden) said: 'I want you to take back what you called me this evening.' Stanford said: 'Well, what did I call

you?' Pres said: 'You said if I was a brother of Tom Carden, I was a God-damn son-of-a-bitch,' when Stanford said: 'It's a damn lie and I won't take nothing back and I won't run,' stepped towards Pres and threw his right hand under his coat when the shot was fired." Appellant on this point testified to a conversation had with deceased in the afternoon, and that deceased had called him a God-damn son-of-a-bitch, when he left. That he went back to the saloon later only after being told that deceased had left and gone home, or he would not have gone to the saloon. That when he entered the saloon, Tom Carden said: "Come, let's take a drink," when General Hamby remarked, "Boys, for God's sake, don't have any trouble here," to which he replied, "All I want is for him to take back what he said. Stanford remarked, 'What did I say?' I said, 'You told me if I was a brother of Tom Carden I was a God-damn son-of-a-bitch.' He replied, 'It's a God-damn lie, I didn't say it.' I said, 'You did say it.' He said, 'I didn't say it. I am no coward and I ain't going to run, and I'm the fightenest little man you ever saw.' and stepped one or two steps towards me and threw his hand back to get his gun. I knew he was a bad man and would kill me in a minute, and I jerked my gun out." The shot was then fired.

While it is true that appellant testified that the pistol went off accidentally, that he was only trying to stop him, and the court properly charged if the pistol was accidentally fired, to acquit, yet, we think the jury should have been told in the charge, under the circumstances, that even though they found that the pistol was not accidentally fired, if deceased, from his words, acts and conduct at the time, created in the mind of appellant a reasonable expectation or fear of death or serious bodily injury he would have the right to shoot.

The charge on accidentally firing the pistol is admirably drawn, and on another trial of this case the court should in his charge present the theory that if the pistol was fired under those circumstances, *or if intentionally fired* under the same conditions he should be acquitted.

Under our law, it is immaterial what the view of the trial judge may be as to the truth or falsity of an issue presented by the testimony. The matter should be presented to the jury for their determination. The jury may have believed appellant intentionally shot deceased, yet if the jury believed he did do so under the conditions set forth in this paragraph of the court's charge, he would be justified in so doing under our law.

3. As the case will be reversed on account of the above matters, there is another thing we would call attention to, although not complained of in the motion for a new trial. The court charged the jury in a paragraph on the theory that if appellant went to the saloon with the intent to provoke a difficulty, he could not claim to have acted in self-defense. If on another trial the court thinks the

evidence calls for this charge, he should also inform the jury in an affirmative way that if defendant had no such object or purpose, and did not know deceased was in the saloon, he would not be deprived of his right to defend himself against real or apparent danger.

The judgment is reversed and the caused is remanded.

*Reversed and remanded.*

[Rehearing denied June 21, 1911.—Reporter.]