Jimmy Willard **ROBERSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44959.

Court of Criminal Appeals of Texas.

May 17, 1972.

Gladys Melton, Dallas, for appellant.

Henry Wade, Dist. Atty., and Jim Moss, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

The conviction was for aggravated assault; the punishment, confinement for one year in the county jail and a fine of $25.00.

The failure of the trial court to submit to the jury the law of self-defense in response to the appellant's timely objection is presented as a ground of error.

We hold the appellant was entitled to such a charge because the evidence in the record raised the issue.

The appellant was charged separately and directly with aggravated assault upon James A. Vance by cutting him with a knife under circumstances not amounting to an intent to murder or maim. His conviction rests solely upon proof that he was a principal with Ray Langston, who was shown to have cut Vance.

It was approximately 9:30 p.m. when the appellant was seated with six other persons in a two-door car, parked at the Half Circle S Drive-In. Langston was seated in the front seat on the passenger side, his wife was in the driver's seat and one of their sons was seated between them. Gloria Yberra was seated behind Mrs. Langston, the driver; Vance was seated behind Langston; between them were the appellant, seated next to Vance and the Langston's son, seated next to Miss Yberra.

Langston and Vance began to argue about money Langston owed Vance. Langston "pulled three or four dollars out of his pocket and said, 'Here's all I got. Do you think you can take it from me?'" Vance responded that he needed the money and that he understood Langston's wife had given Langston the money to pay him. Langston got out of the car and said, "You s—— o—— b————, get out of the g—— d———— car."

The evidence is in conflict as to what followed. Vance said he leaned forward

to push the seat and get out of the car. Langston hit him with a sharp object and as he jerked back the appellant grabbed him and held his arms tightly while Langston got into the car and cut him across the face above the right eye and through his lips. Vance stuck his head behind the appellant for protection and Langston hit and cut the appellant's hand. The appellant said, "G—— d——, you caused him [Langston] to hit me." Vance said the appellant then crawled over him, grabbed his feet and tried to pull him from the car.

Miss Yberra testified that it was the complaining witness Vance who "dared Mr. Langston to get out of the car and fight him." She said that when Langston opened the car door and the dome light came on she could clearly see that Vance had a knife in his hand. She said that "they started fighting" then Vance fell back into the car "trying to cover behind Mr. Roberson . . . He sat back in the seat of the car, then he tried to cover behind [appellant's] back, you know and all I could see was the knives together, fighting each other." She further testified that appellant tried to stop the fight and that he attempted to push her and the Langston boy who was sitting between them out of the car door opposite the side where the fight was taking place. Miss Yberra testified that appellant kicked at Langston, then "crawled over James Vance's side of the car; he crawled out and got Willie Ray [Langston] out of the car and told him to give his knife to his wife."

Langston, whose case for assaulting Vance was still pending, took the stand and testified that Vance told him "to get out of the damn car, and he'd whup me." He stated that when he got out of the car, Vance started to come out after him with a knife in his hand. Langston then stepped back and got his knife out.

Langston testified that Vance was trying to push the seat up and said, "We're going to settle this damn stuff right now." Langston did not wait for Vance to get out of the car but "started working on him. Didn't let him out of the car. . . . He got to fall over towards [appellant] and [appellant] was trying to get my little boy and the girl out of the back seat of the car because by then we were back in the car, fighting."

Langston said he was acting in self-defense from Vance's attack with the knife.

The State contends that no issue of self-defense is raised; that such an issue is inconsistent with appellant's testimony that he did not grab Vance until after the wounds had been inflicted and then only as part of his efforts to stop the fight.

■ Appellant's denial of the acts on his part of which complaint was made would not necessarily preclude a submission of the issue of self-defense. "If there is evidence from which the jury may deduce a finding of self-defense—on the doctrine of principals or otherwise—the court should charge on that issue although defendant denies striking the injured party." 4 Branch's Ann.P.C. 482 (2d ed. 1956).

Under the State's theory of the case and that presented to the jury, the appellant could *only* be guilty as a principal to the offense allegedly committed by Langston.[1] Langston would have clearly been entitled to a charge on self-defense. We do not see how the State can rely upon the theory of principals to sustain a conviction and deny that this appellant was entitled to a charge on self-defense under the theory of principals. Prater v. State, 60 Tex.Cr.R. 88, 131 S.W. 325 (Tex.Cr.App. 1910) and Gerard v. State, 78 Tex.Cr.R. 294, 181 S.W. 737 (Tex.Cr.App. 1915), are authority for the appellant's contention.

1. There is no distinction between prrincipals and accomplices in misdemeanor cases.

■ The trial court's failure to charge · on self-defense over appellant's timely objection constituted reversible error.

Accordingly, the judgment is reversed and remanded.

Opinion approved by the Court.