Cecelia GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 45863.

Court of Criminal Appeals of Texas.

April 4, 1973.

Joseph (Sib) Abraham, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty., Harry T. Petersen, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury on a plea of not guilty, appellant was convicted of murder. Her punishment was assessed at 27 years.

The appellant by ground of error contends that the court erred in failing to charge the jury on the issue of self-defense. An adequate and timely objection in writing to the omission of such instructions was filed.

The record reflects that at about 2:00 p. m. on August 28, 1970, appellant shot and killed her husband, Manuel Garcia, with a 12 gauge shotgun.

The State's theory of the killing, as testified to by State's witnesses, was that about 11:19 a. m. on August 28, appellant called the police department and asked: "What is the charge if I shoot my husband dead center with a shotgun?" The response was "Murder." Further conversation concerned trouble she stated she had with him "last night" when she had fired a shotgun blast through the ceiling of their bedroom.

Five minutes later, according to State's witness, she called again, stating that the police should come to see that "this shotgun blast was in the ceiling." A police officer went to the residence a little before noon, and reported that appellant told him that on the previous evening she and her husband had been fighting, and during the "shuffle" she had discharged a shotgun through the "roof" of the bedroom. He saw the hole in the ceiling and roof. Appellant asked him what would happen if she shot her husband, and was told that she would be charged with murder.

A bookkeeper at the business where deceased worked testified that about noon, while deceased was out, appellant called, was very excited, and asked to have her husband call home as soon as he came back. He returned to the office about 1:15 p. m., and called appellant, and then left, saying he was going home.

At about 2:15 p. m., the police got another call from appellant in which she said: "I just shot someone but I did not mean to." The same officer who had previously been at appellant's home went in

response to this call and found deceased in the bedroom shot in the stomach. Deceased told the officer that when he arrived home and entered the bedroom, appellant was standing on one side of the bed with a shotgun in her hands and as he walked over, "she let him have it." He was taken to a hospital, where he died from his wound six days later.

With reference to whether or not an issue of self-defense was raised, the testimony of appellant, who took the stand, is in substance as follows:

About midnight of August 27, 1970, while she was asleep in bed her husband came home drunk and mad. He started shouting at her about some of their domestic troubles. She said he hit her a few times, and reached as if he was going to pull a knife [1] from his pocket and threatened to cut her throat. She turned around and picked up a shotgun and it went off and shot a hole in the ceiling.

The next morning, August 28, she called the police and told them that the preceding night her husband had threatened to cut her throat with a knife, and that she "just shot the shotgun in the ceiling, just to scare him." That afternoon, the deceased came home about 2:00 o'clock mad and "cussing." She was feeling sick, being to some extent under the influence of "pills," and was lying on the bed in the bedroom. She testified as follows:

"A. (BY MRS. GARCIA at the blackboard) He come over to the side of the bed right about here on the corner, and I was still laying down. He was still standing over at me sort of yelling at me and he kept yelling and yelling. And he said, 'Well, if you're that sick, I'll just end it right now.' And he went in his pocket for his pocket knife, I guess, and I just rolled across like this in the corner and just reached and rolled back across the bed—

"Q. Wait a minute, what do you mean you rolled across?

"A. Sort of got up. I'm sort of limber you know and I just rolled back here and I can reach the corner from the bed, put my hand on the wall like this. And I grabbed the shotgun and rolled back over when I got just about like I am right here, the little figure here. I got just about like this and was laying like this and the shotgun was like this and I don't know if I had my hand on the trigger or not, but it slid part on. It was not all the way shut and it went like this and it went off and he got—I was about a foot, maybe not even a foot, about a foot and a half away."

On cross-examination, she repeated that it was when deceased put his hand in his pocket and said, "if you're that sick, we're going to end it all right now" that she reached for the shotgun. She was lying on the bed, and "I rolled sort of forward and I grabbed it out of the corner, and then I rolled straight back the same way I got up." She said the gun went off accidentally with its front end about a foot and a half from deceased, and that she did not mean to shoot him.

On re-direct, she gave this testimony:

"Q. (BY MR. ABRAHAM) When you went to get the shotgun what were you thinking?

"A. Just to scare him so he'd stop and leave me alone. I felt bad enough without him jumping all over me about the bills and the doctor's office and everything and the clothes and the dishes, the whole general situation.

"Q. And, Mrs. Garcia, whenever he told you, I think you testified earlier, 'Well, if you're that sick, we may as well end it right now'?

[1]. She said she knew he carried a knife, a "barlow" as she called it, with a shorter and a longer blade.

"A. Yes, sir.

"Q. How do you feel in response to that statement?

"A. Scared stiff.

"Q. What did you think was going to happen?

"A. I didn't quite know. I just wanted to scare him to leave me alone, you know.

"Q. Did you have any feelings as to whether or not he would try to harm you in anyway, cause you serious bodily injury?

"A. I was scared when he got mad no telling what he'd do.

"Q. Had he struck you on other occasions?

"A. Yes, sir. And he knocked a hole in the wall before, too, just haul off and hit the wall.

"Q. Had he struck you on other occasions, too?

"A. Yes, sir.

"Q. Did you feel at that time when he told you 'let's just end it right now,' did you feel he was going to cause you any serious bodily injury?

"A. Yes, sir.

*    *    *    *    *    *

"Q. You were pretty mad at him on the twenty-eighth of August of 1970, you just testified you wanted him to leave you alone.

"A. I wasn't mad, sir, I was scared."

"In determining whether any defensive charge should be given, the credibility of evidence or whether it is controverted or conflicts with other evidence in the case may not be considered. When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury.

It is then the juror's duty, under the proper instructions, to determine whether the evidence is credible and supports the defense." Gavia v. State, Tex.Cr.App., 488 S.W.2d 420, 421.

We copy from 29 Tex.Jur.2d, Homicide, Section 304, page 566, as follows:

"In the event that the issue of self-defense is raised by the evidence, the court should instruct on the matter in a prosecution for murder, or assault with intent to murder. The fact that the defendant may rely on some other defense, or that the evidence raising the issue may be conflicting or that the court may disbelieve it, cannot affect the obligation to give the charge."

The State, in its brief, seems to argue that appellant relied on the defense of accident, on which a charge was given, and that her evidence was insufficient to raise the additional defense of self-defense. In support, the case of Vanwright v. State, Tex.Cr.App., 454 S.W.2d 406, is cited. The holding on that proposition in Vanwright is set forth in the opinion as follows:

"The remaining ground of error relates to the failure of the court to charge on self-defense.

"Appellant's defense was accident. *We find no evidence in the record which would raise the issue that appellant shot the deceased in defending himself against an unlawful attack, real or apparent, giving rise to apprehension of losing life or suffering serious bodily injury.*" (Emphasis added)

In Wesley v. State, Tex.Cr.App., 65 S. W. 904, this Court reversed because the trial court failed to charge on self-defense, in addition to the charge on accident, which was given. See also Carden v. State, 62 Tex.Cr.R. 607, 138 S.W. 396; Merritt v. State, 85 Tex.Cr.R. 565, 213 S. W. 941.

Appellant's testimony shows that deceased was at the time he was shot advanc-

ing toward her, and was, in her mind, making an apparently unlawful attack; that she was afraid; that he had his hand in his pocket as though to draw a knife, and that at the very time was making what she construed as a threat to end her life. She said that he was "very mad" at her, and that it was under such circumstances that she reached for the shotgun. Furthermore, he had made an attack on her the night before, had threatened to cut her throat, had reached for his knife and she had stopped his advance on her by firing the shotgun toward the ceiling.

It is true that she stated she did not intend to shoot the gun. The court, in view of this testimony, charged on accident. Evidently the jury did not believe that the gun was fired by accident. However, appellant, under her testimony, was entitled to have the jury instructed on the law of self-defense. Under such a charge, even though the jury found that the firing was not an accident, it may have had a reasonable doubt as to whether she was defending herself against an unlawful attack, real or apparent, giving rise to a reasonable apprehension of losing her life or suffering serious bodily injury. Roberson v. State, Tex.Cr.App., 479 S.W.2d 931; Merritt v. State, supra.

The court committed reversible error in failing to charge on the issue of self-defense.

In view of our disposition of this appeal, it is not necessary that we discuss appellant's other grounds of error.

Reversed and remanded.

Opinion approved by the Court.

MORRISON, Judge (dissenting).

The majority reverses this conviction because of the failure of the trial court to charge on the law of self-defense. As I read appellant's testimony it does not raise the issue of self-defense. I must, therefore, dissent.

Although the appellant testified that the deceased threatened her, she did not testify she feared he would actually carry out his threats. Instead, all the way through, she testified that she did not intend to kill the deceased and that the shotgun discharged accidentally.[1]

A defense of accident such as that presented here, where the appellant testifies that she did not intend to shoot the deceased is inconsistent with a self-defense which requires a conscious act of self-protection in the face of threatened harm. See Whitehead v. State, Tex.Cr.App., 450 S.W.2d 72.

In Rice v. State, 156 Tex.Cr.R. 366, 242 S.W.2d 394, we concluded that:

"Appellant, having testified, . . . made his own defensive theory and is bound thereby."

I dissent.

1. "Q. Did you intend to kill him?
"A. No sir. I wouldn't hurt nobody. I loved him because he's the only thing I had.
      \*     \*     \*     \*     \*
"Q. And you say you got the shotgun and it went off accidentally?
"A. Yes, sir. I don't think I had my hand on the trigger. I don't know.
      \*     \*     \*     \*     \*

"Q. And you say it went off accidentally?
"A. Yes, sir. I didn't mean to shoot him.
      \*     \*     \*     \*     \*
"Q. And, of course, you know what happens when you pull the trigger on a shotgun, don't you?
"A. Yes, sir. I didn't mean to shoot him. I didn't want to hurt him."