L. D. BOUNDS, Petitioner,

v.

Kerry Tyrone CAUDLE et. al.,
Respondents.

No. B–6792.

Supreme Court of Texas.

Nov. 30, 1977.

Rehearing Denied Jan. 25, 1978.

Mahoney, Shaffer, Hatch & Layton, Lee
Mahoney, Corpus Christi, for petitioner.

Wood, Burney, Nesbitt & Ryan, James P.
Ryan, Corpus Christi, for respondents.

BARROW, Justice.

This is an appeal from two separate judgments resulting from a consolidated jury trial of an appeal from a probate proceeding and a tort action. The suits resulted from the death by gunshot of Mrs. Robbie Bounds. The children of Mrs. Bounds, Kerry Tyrone Caudle and Cheryl Kay Caudle, alleged and the jury found that their stepfather, Dr. L. D. Bounds, intentionally and wrongfully caused their mother's death. The trial court rendered judgment in the probate proceeding which admitted the will

of Mrs. Bounds to probate, but disqualified Dr. Bounds to serve as Independent Executor of the estate. Judgment was rendered in the tort action whereby a constructive trust in favor of the children was imposed on all of Mrs. Bounds' property which would have passed to Dr. Bounds under her will, and they were granted the proceeds of a life insurance policy on Mrs. Bounds' life payable to Dr. Bounds. The two children were also awarded the damages found by the jury for their claim under Art. 4651 et seq.[1] for the wrongful death of their mother. The court of civil appeals affirmed the judgment in the probate proceeding, and it upheld the imposition of the constructive trust and the award of the insurance proceeds. It reversed and rendered a take-nothing judgment on the claim for wrongful death. 549 S.W.2d 438. We reverse the judgments of the lower courts and remand the cause to the trial court for a new trial.

Robbie Caudle and Dr. Bounds were married in 1962. No children were born of this marriage; however, both had been married once before and each had two children by their prior marriages. The shooting ended a nine-year marriage marked by discord and even some physical abuse. On the night of March 1, 1971, Mrs. Bounds was shot twice and killed in the bedroom of the family home in Corpus Christi. Only the deceased and Dr. Bounds were present at the time of the shooting. The evidence is conflicting about whether Dr. Bounds intentionally shot her or whether she was unintentionally shot while he was attempting to wrest the revolver from her grasp. Dr. Bounds was indicted for murder, but was permitted to plead *nolo contendere* and, upon this plea, he was convicted of negligent homicide in the first degree, a misdemeanor.

## CAUDLE APPLICATION

We granted the application of the Caudle children to consider whether or not the interspousal tort immunity doctrine should bar their claims which are based on a wilful or intentional tort. The children recognize that they cannot recover in the suit for wrongful death if Mrs. Bounds' cause of action, had she survived, is barred by the doctrine. See Tex.Rev.Civ.Stat.Ann. art. 4672. The doctrine of interspousal tort immunity was adopted in Texas in the case of *Nickerson and Matson v. Nickerson*, 65 Tex. 281 (1886), and was last considered and upheld by this Court in *Turner v. Turner*, 385 S.W.2d 230 (Tex.1965). It is urged that there has been such a great change in recent years in Texas laws regarding marital property and the nature of marital relationship that the doctrine is no longer valid for wilful or intentional torts.

The doctrine of interspousal tort immunity had its origin in the common law and is based on the legal fiction that the husband and wife became one person in law. Under this concept, married women lost their capacity to sue or be sued without the joinder of the husband. The wife's personal and property rights as well as her legal existence were considered suspended during the marriage. The husband acquired all of his wife's choses in action and could assert them in his own name, and he became liable for the torts of his wife. This concept necessarily made it impossible for one spouse to maintain an action against the other. Comment, *Intrafamily Immunity*, 20 Baylor Law Review 27 (1967).

At one time almost all jurisdictions adopted the rule that interspousal suits for personal torts were not permitted. In *Nickerson and Matson v. Nickerson*, it was held that torts inflicted upon the wife by her husband and another gave no right of action to the wife against her husband. The court said:

> The rule at common law, that no action can be maintained by a wife for a tort committed upon her person by her husband, has been often said to rest upon their entire unity; but it would seem to

1. Vernon's Rev.Civ.Stat.Ann.

us to rest rather upon grounds of public policy.

In *Turner v. Turner*, this Court held that the husband had no right of action against his wife to recover for his attorney's fees incurred in defending an alienation of affections suit filed against the Turners by the wife of a friend. The Court said:

> The *Nickerson* case has been followed by many cases, and an examination of Shepard's Texas Citations discloses that the rules of law laid down as quoted above have never been questioned. See also *Gowin v. Gowin*, Tex.Civ.App., 264 S.W. 529, 1924, affirmed, Tex.Com.App., 292 S.W. 211, 1927; *Latiolais v. Latiolais*, 361 S.W.2d 252, 253, Tex.Civ.App.1962, writ ref. n. r. e.; 30 Tex.Jur.2d, p. 234, § 145.

There have been major changes in the laws defining the marital relationship since the *Turner* decision. The 1967 amendment to what was then Article 4615 (now Section 5.01(a)(3) of the Family Code) provided that a wife's recovery for personal injuries other than for loss of earning capacity is part of her separate estate. *See Graham v. Franco*, 488 S.W.2d 390, 396 (Tex.1972). Section 4.04 of the Family Code now permits a spouse to sue and be sued without the joinder of the other spouse. Under Section 5.21 of the Family Code the wife has the sole management, control and disposition of her separate estate. These changes invalidate the common law rationale for the doctrine, the fictional unity of the marriage relationship.

Nevertheless, we must determine if the doctrine should be maintained as a matter of public policy. We recognize fully the importance of the family unit in our society and that peace and tranquility in the home are endowed and inspired by higher authority than statutory enactments and court decisions. *See Felderhoff v. Felderhoff*, 473 S.W.2d 928, 933 (Tex.1971). However, we do not believe that suits for wilful or intentional torts would disrupt domestic tranquility. The peace and harmony of a home which has already been strained to the point where an intentional physical attack could take place will not be further impaired by allowing a suit to be brought to recover damages for the attack.

In recent years the interspousal tort immunity doctrine has come under severe attack from nearly all courts that have considered the doctrine. In 1955 the annotation, *Action by One Spouse Against the Other*, was published in 43 A.L.R.2d 632 and in Section 6 it listed 17 states which to some extent permitted one spouse to sue the other spouse for personal injuries. The supplements to this annotation show that there is now a clear majority of states which have abrogated the doctrine completely or limited its application.[2] The doctrine has also been subjected to severe criticism by most legal writers. *See* Speer, *Marital Rights in Texas*, § 317 (4th ed. 1961) and Prosser, *Law of Torts*, § 122 (4th ed. 1971). Although most authorities recognize a distinction between a claim based on a negligent act and one based on an intentional tort, all agree that there is no sound basis for barring a suit for an intentional tort. We concur and accordingly we abolish the rule established in *Nickerson* to the extent that it would bar all claims for wilful or intentional torts. This holding shall be applicable only in the present case and in similar cases in which the tort occurred on or after March 1, 1971, the date Mrs. Bounds was shot. The children of Mrs. Bounds are not barred from asserting a claim for damages against Dr. Bounds for the wrongful death of their mother.

## BOUNDS APPLICATION

The application of Dr. Bounds urges that there is no legal basis to support the imposition of the constructive trust or the forfeiture of the life insurance proceeds. He also asserts that there were several procedural

2. 43 A.L.R.2d, *Later Case Service* 332 (1969) and June 1977 Pocket Part 147.

errors in the trial of the case which require a reversal of the judgment.

Dr. Bounds contends that before a constructive trust can be imposed there must be a conviction and sentence for wilfully bringing about the death of the insured. He urges that since he was convicted only of the offense of negligent homicide, a constructive trust should not have been imposed. This contention is largely based on Sec. 41(d) of the Probate Code which provides in part:

> *Convicted Persons and Suicide.* No conviction shall work corruption of blood or forfeiture of estate, except in the case of a beneficiary in a life insurance policy or contract *who is convicted and sentenced* as a principal or accomplice, in wilfully bringing about the death of the insured, in which case the proceeds of such insurance policy or contract shall be paid as provided in the Insurance Code of this State, as same now exists or is hereafter amended; . . . (Emphasis added)

Dr. Bounds asserts the Probate Code takes precedence over Art. 21.23 of the Insurance Code which provides:

> The interest of a beneficiary in a life insurance policy or contract heretofore or hereafter issued shall be forfeited *when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured.* When such is the case, the nearest relative of the insured shall receive such insurance. (Emphasis added)

Although the conviction for negligent homicide implies that the killing was committed without intent, it is settled law that the judgment in the criminal case was not binding upon the court in the civil proceeding. *State v. Benavidez*, 365 S.W.2d 638 (Tex.1963); *W. O. Hair v. Penn Life Ins. Co.*, 533 S.W.2d 387 (Tex.Civ.App.-Beaumont 1975, writ ref'd n. r. e.). This rule is particularly applicable here where the conviction was based upon plea bargaining.

■ Texas courts have taken the position that the law will impose a constructive trust upon the property of a deceased which passed either by inheritance or by will if the beneficiary wilfully and wrongfully caused the death of the deceased. *Greer v. Franklin Life Ins. Co.*, 148 Tex. 166, 221 S.W.2d 857 (1957); *Parks v. Dumas*, 321 S.W.2d 653 (Tex.Civ.App.-Fort Worth 1959, no writ); *Pritchett v. Henry*, 287 S.W.2d 546 (Tex.Civ.App.-Beaumont 1955, writ dism'd). *See also Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559 (1948). The trust is a creature of equity and does not contravene constitutional and statutory prohibitions against forfeiture because title to the property does actually pass to the killer. The trust operates to transfer the equitable title to the trust beneficiaries. Although we have found no case which considered the relationship of Sec. 41(d) of the Probate Code to the common law rule which imposes a constructive trust, it was pointed out in *Greer* that Art. 21.23 should be held to restate the common law rule which would bar the beneficiary of a life insurance policy from profiting from his own wrong.

■ We therefore conclude that the imposition of a common law constructive trust in a situation such as presented here is not inconsistent with the legislative intent behind Sec. 41(d) which requires an outright forfeiture in the case of a convicted killer.

The jury here found: (1) that Dr. Bounds shot and killed Mrs. Bounds; (2) that the action of Dr. Bounds in shooting and killing Mrs. Bounds was intentional; and (3) that such action was wrongful. These jury findings fully support the judgment of the trial court forfeiting his interest in the insurance policy on the life of Mrs. Bounds and imposing a constructive trust on the property devised to him under her will.

■ Dr. Bounds has also complained in his application for writ of error that the trial court erred in overruling his objections to the submission of Special Issue No. 3 which reads as follows:

> Do you find from a preponderance of the evidence that the action of the De-

fendant, L. D. Bounds, in shooting and killing Robbie M. Bounds, if you have found that he did, was wrongful?

Dr. Bounds timely objected to the submission of this issue in that the court failed to define the word "wrongful" and further that it did not instruct the jury as to the elements of self-defense. In connection with this objection, Dr. Bounds submitted a requested instruction wherein he defined "self-defense" in substantially the form suggested by this Court in *Grieger v. Vega*, 153 Tex. 498, 271 S.W.2d 85 (1954). No question has been raised concerning the correctness of the requested instruction, but the court of civil appeals found that there was no evidence to raise the issue of self-defense. The court concluded that since Dr. Bounds testified that he did not "intend" to shoot Mrs. Bounds, the ultimate issue was accidental death and not self-defense.

In support of its holding that the defense of accidental death and self-defense cannot co-exist, the court of civil appeals cited *Whitehead v. State*, 450 S.W.2d 72 (Tex.Cr. App.1968) and *Sias v. State*, 495 S.W.2d 890–891 (Tex.Cr.App.1973).[3] The rule in these two cases is best explained by the description in *Sias* of the *Whitehead* holding as follows:

> In the relatively recent case of *Whitehead v. State*, 450 S.W.2d 72, this Court in an opinion by Judge Morrison on motion for rehearing held it was not error to refuse to give a charge on self-defense where the defendant testified that the killing was an accident and *he had nothing to fear from the deceased*. (Emphasis ours)

It is significant that in both *Sias* and *Whitehead* the fatal weapon was in the hands of the accused and there was no testimony in either case that the defendant was placed in fear of imminent death or great bodily harm at the hands of the deceased. It is such fear which is the essential element of self-defense, not intent to kill. Vernon's Penal Code Ann. sec. 9.31(a).

Here the testimony of Dr. Bounds is that when he and Mrs. Bounds arrived home the argument which had begun at the dinner club was continuing and that when he came out of the bathroom, she was standing in the bedroom pointing the revolver at him. He further testified that he was able to grab the gun and, while struggling with her for possession of the gun, she was shot.

He testified:

> I told you I don't know where my hands were at the time that we were scuffling over the gun. I know I had at least one hand on the gun, because that's what I was trying to control, the gun, because I didn't want to get shot. I didn't want her to get shot, but it happened anyway.

Also:

Q You said you were going to be able to handle him [sic]. You pulled the gun around this way.

A I told you I grabbed the gun and diverted it away from me. You're doing this. I'm not doing that.

Q You were pointing the gun at her?

A I was getting it away from me. That was my main . . .

Q Getting it away from you?

A Yes.

Q And it went towards her?

A It did when it went over.

Q Were you trying to discharge the gun in her direction?

A I was trying to protect myself.

This evidence, although refuted and rebutted by circumstantial evidence, clearly is some evidence that Mrs. Bounds was shot during the scuffle which ensued when Dr. Bounds undertook to disarm her in order to keep from being shot. This testimony raises the issue of self-defense as well as that of accidental death. We do not find the two defenses inconsistent under the facts in this case. The submission of both have

3. It is settled that the law of self-defense is the same in both civil and criminal cases. *Famb-rough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943).

been upheld in criminal cases under somewhat similar facts. See *Garcia v. State*, 492 S.W.2d 592 (Tex.Cr.App.1973).

We are required to apply the "no evidence" test in determining whether the requested instruction was required to be submitted to the jury. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *McDonald v. New York Central Mutual Fire Ins. Co.*, 380 S.W.2d 545 (Tex.1964); 3 McDonald, *Texas Civil Practice* § 12.08C (1970); Tex.R.Civ.P. 279; Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.Law Rev. 359 (1960). As a result, we must consider only the evidence and the inferences that may be reasonably drawn therefrom which are favorable to Dr. Bounds' contention that he was acting in self-defense, and to disregard all of the evidence and inferences to the contrary. Under this test, the testimony of Dr. Bounds does raise the issue that he was acting in self-defense at the time that Mrs. Bounds was shot and killed. Furthermore, the issue was properly raised by his trial amendment and was timely requested by him in his instruction to be given with Special Issue No. 3. The trial court therefore erred in refusing to give this instruction. This error mandates a reversal of the judgment and remand for a new trial.

We have considered the other procedural errors complained of by Dr. Bounds and we agree with the disposition made of these points by the court of civil appeals.

The judgments of the courts below are reversed and the consolidated cause is remanded to the trial court for trial on the merits. The costs of this appeal are taxed one-half to Dr. Bounds and one-half to the Caudle children.

## ON MOTION FOR REHEARING

The Caudle children urge that this Court is without jurisdiction to consider Dr. Bounds' application for writ of error because he failed to file a Motion for Rehearing in connection with the final judgment of the court of civil appeals. See *Oil Field Haulers Association v. Railroad Commission of Texas*, 381 S.W.2d 183 (Tex.1964). They contend the court of civil appeals rendered a second, final judgment after rendering its original judgment. The argument is without merit, however, because the record shows that only one judgment was entered into the record and that Dr. Bounds timely filed a Motion for Rehearing.

Accordingly, the Caudles' Motion for Rehearing is overruled. The Motion for Rehearing cited by Dr. Bounds is also overruled. No further Motions for Rehearing will be permitted to be filed in this cause.